**Juan Manuel MENDEZ, Petitioner,**

v.

**Michael B. MUKASEY,[1] Attorney General, United States Department of Justice, Respondents.**

**Docket No. 06–0032–ag.**

United States Court of Appeals, Second Circuit.

Argued: June 12, 2007.

Decided: May 12, 2008.

As Amended: May 16, 2008.

mer Attorney General Alberto Gonzales as a respondent in this case.

Martin L. Rothstein, Barst & Mukamal, LLP (Dan Lundy, on the brief), New York, N.Y., for Petitioner.

Jennifer Paisner, Office of Immigration Litigation, United States Department of Justice, Civil Division, Washington, D.C., for Respondent.

Before: McLAUGHLIN, CALABRESI, and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge:

Petitioner Juan Manuel Mendez, a native and citizen of Mexico, seeks review of a decision of the Board of Immigration Appeals ("BIA") summarily affirming a decision of an Immigration Judge ("IJ"), which denied Mendez's application for cancellation of removal. *In re Juan Manuel Mendez*, No. A78 428 394 (B.I.A. Dec. 9, 2005), *aff'g* No. A78 428 394 (Immig. Ct. N.Y. City Sept. 28, 2004). The IJ denied Mendez's petition on the grounds that he had not demonstrated that his removal would result in "exceptional and extremely unusual hardship" to his United States citizen children. 8 U.S.C. § 1229b(b)(1)(D).

Petitioner argues that the IJ erred as a matter of law by applying the wrong standard for determining whether the hardship caused by his removal would be "exceptional and extremely unusual." In *De La Vega v. Gonzales*, 436 F.3d 141 (2d Cir. 2006), we held that "exceptional and extremely unusual hardship" determinations are discretionary judgments for which we lack jurisdiction to review. *Id.* at 145–46. Notwithstanding this decision, Petitioner asserts that we have jurisdiction to review his claim regarding the construction and application of the hardship standard, arguing that "so far as *De La Vega* holds that hardship determinations are discretionary, that holding is based on inapplicable reasoning and case law regarding a *previous version* of the Cancellation statute, which differs in critical ways from the current one." We dismiss the petition for lack of jurisdiction because we believe that *De La Vega*'s holding encompasses the claims for which Petitioner seeks review.

## BACKGROUND

Because the agency has not questioned Petitioner's credibility, we take the facts asserted by him to be true. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271–72 (2d Cir.2005) (holding that, where there is no adverse credibility determination in the decision being reviewed by this Court, we assume that the petitioner is credible). Petitioner entered the United States in 1989, at age fifteen, and has lived in this country ever since. In 1998, he married; his wife is also present in the United States without documentation. Petitioner and his wife have two children: their son, Jesus Manuel, was born in 1992, and their daughter, Daisy, was born in 1999. Both children are United States citizens.

Petitioner's daughter suffers from severe asthma. Petitioner testified that she has about twenty-five asthma attacks a year and that her condition requires the use of a home nebulizer as well as an inhaler. She also requires regular visits to the emergency room for serious attacks.

Shortly after he was born, Petitioner's son was diagnosed with Grade II Vesicoureteral Reflux. This disease causes urine to reflux from the bladder back to the kidneys and liver, causing staph infections, scarring, and tissue damage. Ultimately, the condition could lead to kidney or liver failure. Jesus received treatment for this condition until age seven, at which point tests showed that his kidneys were normal. He must see a specialist every year, however, to ensure that there are no recurrences or lasting effects.

Petitioner testified that there are "not many jobs available" in the part of Mexico that he is from, and his relatives would be unable to support him and his family if he returned. As a result, he would be unable to pay for his children's medical care or education there. Moreover, there is no doctor in his village in Mexico, and he would have to pay to travel to another city whenever one of his children needed medical care. According to Petitioner, the region of Mexico in which his village is located has few doctors and even fewer specialists. He was uncertain whether the medications for his daughter's asthma would be available there, but he was certain that, if they were, they would be "very expensive."

Additionally, Petitioner's children are unfamiliar with Mexican culture and not fully comfortable speaking Spanish. Petitioner testified that his son was in an honors program and wanted to be a lawyer, a doctor, or a police officer. In Mexico, Petitioner did not think he would be able to pay for the education necessary for his son to pursue these fields. In short, Petitioner concluded that relocating to Mexico would be a "disaster" for his children.

The Immigration and Naturalization Service [2] served Petitioner with a Notice to Appear on June 10, 2002. Petitioner conceded removability and applied for cancellation of removal. The IJ denied the application, finding Petitioner ineligible for relief, and the BIA affirmed.

## DISCUSSION

In order to demonstrate eligibility for cancellation from removal, Petitioner must show that he:

(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

(B) has been a person of good moral character during such period;

(C) has not been convicted for an offense under section 1 182(a)(2), 1227(a)(2), or 1227(a)(3) of this title . . . ; and

(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1). The Government has stipulated that Petitioner meets the first three requirements. Accordingly, the only issue is whether Petitioner has demonstrated that his removal would result in

---

**2.** The Immigration and Naturalization Service ceased to exist in 2003. The functions at issue here are now performed by the Bureau of Citizenship and Immigration Services, within the Department of Homeland Security. *See* 6 U.S.C. § 271(b).

exceptional and extremely unusual hardship to his children.

The IJ found that it would not. She wrote that, "[w]hile it is clear from the evidence of record that the respondent's children will, in fact, suffer a hardship, one which might even be characterized or classified as an extreme hardship, the Court finds that there is insufficient evidence on which the Court can conclude that this hardship to his children would be exceptional and extremely unusual." The BIA summarily affirmed.

Under 8 U.S.C. § 1252(a)(2)(B)(i), this Court lacks jurisdiction to review "any judgment regarding the granting of relief under ... [8 U.S.C. § 1229b]." Notwithstanding this provision, Petitioner argues that "8 U.S.C. § 1252(a)(2)(B) does not strip courts of jurisdiction to review non-discretionary decisions regarding an alien's *eligibility* for the relief specified in 8 U.S.C. § 1252(a)(2)(B)(i)."[3] *Sepulveda v. Gonzales,* 407 F.3d 59, 62–63 (2d Cir. 2005) (emphasis added). That is, "[o]btaining ... cancellation of removal is a two-step process. First, an alien must prove eligibility by showing that he meets the statutory eligibility requirements. Second, assuming an alien satisfies the statutory requirements, the Attorney General in his discretion decides whether to grant or deny relief." *Rodriguez v. Gonzales,* 451 F.3d 60, 62 (2d Cir.2006) (per curiam) (citations omitted). He argues that "[b]ecause these two stages are distinct, we have jurisdiction to review whether the BIA correctly determined that the alien was *eligible* for" cancellation of removal, *id.,* but we lack jurisdiction at the second stage to review the Attorney General's decision to grant or deny relief, made entirely in his discretion. *See also*

*INS v. St. Cyr,* 533 U.S. 289, 307, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (recognizing the traditional distinction "between eligibility for discretionary relief, on the one hand, and the favorable exercise of discretion, on the other hand").

Petitioner points out that, based on this precedent, we have previously held that we retain jurisdiction to review agency determinations regarding two eligibility requirements for cancellation of removal: (a) that an alien has not been convicted of certain crimes, *see Rodriguez,* 451 F.3d at 62–63; and (b) that an alien "has been a person of good moral character," *see Sepulveda,* 407 F.3d at 62–64. We have also intimated, but not yet held, that we have jurisdiction to review a third requirement—that an alien meets certain physical presence conditions. *See id.* at 63. Petitioner argues that we broke from these holdings in *De La Vega* when we ruled that we lack jurisdiction to review the last remaining eligibility requirement, "exceptional and extremely unusual hardship," concluding that such determinations are inherently discretionary judgments. *See* 436 F.3d at 145–46; *see also Barco–Sandoval v. Gonzales,* 516 F.3d 35, 38–39 (2d Cir.2008) (reaffirming *De La Vega* as binding law).

Petitioner argues there is no compelling reason to differentiate the "exceptional and extremely unusual hardship" determination from the other eligibility requirements. He asserts that the plain language of the cancellation of removal statute suggests no difference between the four requirements, and that there is no compelling argument why, for example, the definition of "physical presence" or "good moral character" is more a question of statutory construction than

---

**3.** In addition, Petitioner argues that this Court retains jurisdiction generally under the REAL ID Act to review any "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D); *see also Xiao Ji Chen v. U.S. Dep't of Justice,* 471 F.3d 315 (2nd Cir.2006).

the definition of "exceptional and extremely unusual hardship."[4] Likewise, Petitioner argues it should be obvious that if the BIA were to deny an alien's petition, not because it deems the hardship to, say, the alien's adoptive mother insufficiently serious, but because it determined that an adoptive mother was not a "parent" within the meaning of 8 U.S.C. § 1229b(b)(1)(D), that we would have jurisdiction to question the agency's statutory interpretation. *See Jun Min Zhang v. Gonzales,* 457 F.3d 172, 180 (2d Cir.2006) (Calabresi, J., concurring).

Importantly, Petitioner asserts, in comparison with hardship requirements in other sections of the INA, the language for cancellation of removal suggests that we have jurisdiction here. The hardship determination for cancellation of removal requires that an alien "establish[ ] that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(D). In contrast, other sections of the INA, including most notably the predecessor to cancellation of removal, suspension of deportation, require that an alien establish extreme hardship "in the opinion of the Attorney General" or "to the satisfaction of the Attorney General." *See* 8 U.S.C. § 1254(a)(1) (suspension of deportation) (repealed 1996); 8 U.S.C. § 1182(i)(1) (§ 212(i) relief). Petitioner points to our decision in *Kalkouli v. Ashcroft,* 282 F.3d 202 (2d Cir.2002) (per curiam), where we held that we lack jurisdiction to review the hardship determination for suspension of deportation *because* the plain language of the provision—"in the opinion of the Attorney General"—"clearly entrusts the decision to the Attorney General's discretion." *Id.* at 204. Petitioner argues that this additional clause, which is lacking for cancellation of removal, suggests a significant difference in the statutes and that we should not read the clause out of the other INA hardship provisions. *See, e.g., Rus-*

---

**4.** While Petitioner concedes that an "exceptional and extremely unusual hardship" determination is necessarily less determinate than other eligibility requirements for cancellation of removal—for example, whether an alien has been physically present in the United States for ten years—he contends that does not counsel for no review, but for more deferential review. He notes that the general standard for when an action is "committed to agency discretion" under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), is whether there is "no law to apply," *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) (internal quotation marks omitted), and that the Supreme Court has defined a discretionary act as one in which the individual authorized to act "must exercise his authority according to his own understanding and conscience," *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 267, 74 S.Ct. 499, 98 L.Ed. 681 (1954). Certainly, Petitioner argues, there is law to apply in reviewing a hardship determination, as evi-

denced by the BIA's own treatment of hardship as a legal standard. *See, e.g., In re A–S–B–,* 24 I. & N. Dec. 493, 497 (B.I.A. 2008) (explaining that the BIA reviews an IJ's factual findings for clear error, but reviews de novo as a question of law whether those facts support a conclusion that the hardship rises to the required level); *see also* 67 Fed.Reg. 54878, 54890 (Aug. 26, 2002) (announcing that the BIA may review hardship determinations for cancellation of removal de novo as a question of law). In short, Petitioner contends that while a hardship determination may entail some discretion on the part of the agency, the decision is not discretionary in the sense that it is committed to the discretion of the Attorney General. *See, e.g., Zhao Quan Chen v. Gonzales,* 492 F.3d 153, 154 (2d Cir. 2007) (per curiam) (denial of motion to reopen or reconsider reviewed for abuse of discretion); *Pedreros v. Keisler,* 503 F.3d 162, 164 (2d Cir.2007) (per curiam) (denial of continuance reviewed for abuse of discretion).

*sello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted)); *Conn. ex rel. Blumenthal v. U.S. Dep't of Interior,* 228 F.3d 82, 88 (2d Cir.2000) ("[W]e are required to 'disfavor interpretations of statutes that render language superfluous.'") (quoting *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)).

Finally, Petitioner argues that any remaining doubt should strongly favor a construction permitting review because of the "strong presumption in favor of judicial review of administrative action," *St. Cyr,* 533 U.S. at 298, 121 S.Ct. 2271, and the "'longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien,'" *id.* at 320, 121 S.Ct. 2271 (quoting *INS v. Cardoza–Fonseca,* 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)).

We find Petitioner's arguments to be persuasive. Were we operating on a new slate, we would be inclined to hold that the question of whether an alien has established "exceptional and extremely unusual hardship" is a determination for which we have jurisdiction to review similar to the other eligibility requirements for cancellation of removal.[5] We are, however, writing on a very full slate. This Court has held that the determination of whether exceptional and extremely unusual hardship is present for the purposes of cancellation of removal is committed to the discretion of the Attorney General, and that, accordingly, we have no jurisdiction to review such a determination. *See, e.g., Barco–Sandoval,* 516 F.3d at 38–39. We are bound by past decisions of this Court. *See United States v. Snow,* 462 F.3d 55, 65 n. 11 (2d Cir.2006) ("[A] prior decision of a panel of this court binds all subsequent panels 'absent a change in law by higher authority or by way of an in banc proceeding'. . . ." (quoting *United States v. King,* 276 F.3d 109, 112 (2d Cir.2002))). We find unpersuasive Petitioner's attempts to distinguish his case from the holdings of *De La Vega* and *Barco–Sandoval.*

**5.** We further believe that Petitioner has raised serious questions about the correctness of the IJ's hardship determination. For example, Petitioner testified that his daughter has around twenty-five asthma attacks each year, several of which require emergency visits to the hospital; that she must use a home nebulizer, a specialized piece of equipment, in addition to an ordinary inhaler; and that doctors do not expect her to outgrow her asthma. The IJ addressed none of these factors, stating incorrectly that "[t]he only evidence respondent has offered regarding this [asthma] is a letter from Dr. Hector Florman of the National Pediatric Center which only indicates that the children have been treated on multiple occasions with respiratory infections" and concluding that "[t]here's nothing in the record to suggest that the asthma suffered . . . is severe in any way." Likewise, the IJ concluded that Petitioner's son, who suffers from Grade II Vesicoureteral Reflux—a condition that may lead to kidney or liver failure—was "cured or . . . certainly in remission." The IJ ignored the fact that the son's yearly examinations are highly specialized and that Petitioner's area of Mexico, if he and his family are deported, has few doctors—let alone kidney specialists—and that Petitioner testified that he will not have the money to pay for the travel to see specialized doctors or to pay for treatment. In short, there are significant questions whether Petitioner's children, both citizens of the United States, will not receive treatment for their serious medical conditions as a result of deportation. *See, e.g., In re Recinas,* 23 I. & N. Dec. 467, 470 (B.I.A.2002) ("[T]he hardship standard is not so restrictive that only a handful of applicants, *such as those who have a qualifying relative with a serious medical condition,* will qualify for relief." (emphasis added)).

Accordingly, we DISMISS the petition for lack of jurisdiction.